```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION


Robert F. Starnes, Jr.,         :

            Plaintiff,          :   Case No. 2:14-1699

    v.                          :   JUDGE MICHAEL H. WATSON
                                        Magistrate Judge Kemp
T. Austin Stout, et al.,        :

            Defendants.         :
```

REPORT AND RECOMMENDATION

Plaintiff Robert F. Starnes, Jr., a federal inmate incarcerated at the United States Penitentiary in Pine Knot, Kentucky, filed this action alleging violations of his Fourth Amendment rights in connection with his arrest on an alleged parole violation. He has named as defendants several employees of the Ohio Adult Parole Authority including T. Austin Stout, the assistant chief legal counsel, Sara Andrews, APA chief, Steve Vukmer, APA supervisor, Bert Fitzgerald, parole officer, Cynthia Ali, regional administrator, and Damian Rodriguez, a task force officer. Mr. Starnes also has named Detective Campo and Officer Shawn Corr of the Sheffield Lake Police Department. Mr. Campo and Mr. Corr have filed a motion to dismiss or, in the alternative, for summary judgment. Defendants Stout, Fitzgerald, Vukmer, and Ali also have filed a motion to dismiss. These motions have been fully briefed. For the following reasons, the Court will recommend that the motions to dismiss be granted.

I. Background

Mr. Starnes has used a form complaint and has indicated that he is bringing a civil rights complaint under 28 U.S.C. §1331 as a federal prisoner. The Court, however, construes Mr. Starnes' complaint, containing allegations of violations of his

constitutional rights by various employees of the Ohio APA or a local police department, as arising under 42 U.S.C. §1983. Consequently, the Court will consider Mr. Starnes's claims within the framework of that statute.

According to the complaint, on July 22, 2010, Mr. Starnes was arrested on a warrant issued by the Ohio APA. The facts surrounding his arrest are set out in a decision from the Court of Appeals for the Sixth Circuit relating to his trial on charges of bank robbery. United States v. Starnes, 501 Fed.Appx. 379 (6th Cir. Sept. 26, 2012). The Court of Appeals' decision reversed a district court's denial of Mr. Starnes' motion to suppress evidence of the robberies seized from his house during this arrest and remanded for further proceedings. Mr. Starnes has attached a copy of this decision to his complaint. He makes specific reference to this decision, issued on September 26, 2012, in his complaint and states "Plaintiff deffers (sic) to the separate legal memorandum included to explain claims more clearly."

The Court of Appeals explained the circumstances of the arrest, relevant to Mr. Starnes' current complaint, this way:

> II. Defendant's Arrest and the Search
>       of His Apartment and Vehicle
>
> Around this same period, three local area banks were robbed, with the last occurring on July 21, 2010. On July 22, 2010, a detective with the Sheffield Lake Police Department ("SLPD") contacted Officer Fitzgerald to inquire about Defendant's parole status. At that time, Officer Fitzgerald learned that Defendant was the prime suspect for the robbery, and he identified Defendant from surveillance pictures taken at the bank. Based on this information, Officer Fitzgerald decided to have Defendant arrested for his failure to report.
>
> That afternoon, officers with the APA, the SLPD, the Fugitive Task Force, and the FBI convened on the Sheffield Lake apartment where Defendant lived with his wife. The parties dispute exactly who was involved in

-2-

the arrest team, but about four to ten officers were on scene.  Because Defendant was deemed a "high risk fugitive," the officers originally planned a "dynamic entry," by forcibly battering the door and entering without warning.  However, after determining that the door would not yield easily, the officers instead effected a "knock-and-announce" entry.

Defendant's wife, Kim Starnes, opened the door.  She was immediately ordered to the floor and placed in handcuffs.  After a brief period, the officers stood Kim up, took her to the living room, and sat her on the couch, where she remained handcuffed.  The officers informed Kim that they were executing a warrant for her husband's arrest based on a parole violation.  Kim responded that there was a court order releasing Defendant from parole, and she directed the officers to a copy of the sentencing judge's order that the couple kept in the kitchen.

Other officers quickly located Defendant at the back of the apartment.  Defendant was ordered to the ground, handcuffed, and arrested.  Defendant also provided the officers with a copy of the sentencing judge's order that he carried in his wallet.  Defendant clearly informed the officers that he was no longer on parole, and he told them, "You're not supposed to be here."  The parties dispute whether Defendant was removed from the apartment immediately upon his arrest or whether Defendant remained on the scene for approximately fifteen to twenty minutes while an initial search of the apartment was conducted.

The APA officers conducted a first search of the apartment, but they seized no evidence.  Sometime during or after this search and Defendant's arrest, FBI Special Agent Kelly Liberti entered the apartment and approached Kim.  Agent Liberti identified herself as an FBI agent, removed Kim's handcuffs, and informed Kim that Defendant was a suspect in a bank robbery. Agent Liberti told Kim that the agents wanted to search the apartment for evidence of the robbery, and she handed Kim a copy of the FBI's standard "Consent to Search" form.  Agent Liberti read the form to Kim, who responded that she and her husband "had nothing to hide" and signed it.  Kim later testified at the suppression hearing, however, that she did not personally read the form, that she was upset and

>   distracted because of the stressful circumstances, and
>   the she felt she had no choice but to sign the form,
>   because by that point, the APA had already begun to
>   search the apartment.
>
>   The FBI then conducted a second search of the
>   apartment and seized a pellet gun, a red bandana, black
>   pants with white striping, and a notebook.  Although
>   the FBI initially sought Kim's consent to search
>   Defendant's vehicle, after discovering that her name
>   was not on the title, the FBI asked the APA to search
>   the van pursuant to its parole authority.  The APA did
>   so and seized a crossbow, bolt cutters, and a
>   camouflage-colored baseball cap.

U.S. v. Starnes, supra, at *3-4.

In his complaint, Mr. Starnes asserts that the Court of Appeals' decision "made manifest that Plaintiff's 4th amend. rights were violated and restricted as Agents named as the Parole Officers and task force entered Plaintiff's residence and arrested him and searched his home against a Court order specifying that they cease any and all supervision."  Mr. Starnes contends that he "suffered false imprisonment" and "was basically kidnapped" by anyone having "a hand in issuing and executing actions of the illegal warrant for violation of parole."  He further states that "[t]he loss of freedom, and items never returned to Plaintiff taken from home during search and arrest, exist still today."

## II.  Legal Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring

the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

Id. It is with these standards in mind that the motion to dismiss will be decided.

### III. Analysis

### A.  The Motion to Dismiss

Both motions to dismiss contend that Mr. Starnes' claims are barred by the statute of limitations applicable to §1983 actions. This is so, these defendants contend, because more than two years passed between the alleged illegal search and arrest in July, 2010 and Mr. Starnes' filing of this action on September 25, 2014.  According to defendants, the statute of limitations began to run for his §1983 claim when Mr. Starnes knew or had reason to know of the violation of his rights.  They contend that, under that facts of this case, that date was July 22, 2010.  Both sets of defendants rely on Hornback v. Lexington-Fayette Urban Cnty., 543 Fed.Appx. 499 (6th Cir. 2013), a case they contend is directly on point here.

The APA defendants further contend that any claim Mr. Starnes has asserted concerning his arrest and prosecution for bank robbery are barred under Heck v. Humphrey, 512 U.S. 477 (1994), because a favorable outcome did not result from the reversal of his conviction.  Additionally, these defendants argue that any claims regarding confiscated personal property or other state law torts can only be brought in the Ohio Court of Claims. The police defendants additionally contend that Mr. Starnes' claims against them in their official capacity cannot succeed and that they are entitled to qualified immunity.

In response to the APA defendants' arguments, Mr. Starnes contends that he was not certain he had a Fourth Amendment claim until the Court of Appeals issued its decision.  He explains that his "claim of loss of freedom has nothing to do with criminal charges, but infringement upon my freedom and wife's in our home."  Further, he states, "[t]his suit is because of 4th amendment violations by these agents and supervisors, not Plaintiff's criminal record."  Finally, he offers that "[t]his suit reflects nothing of what I have done, or shouldn't for sure,

-6-

but what the Adult Parole Authority did by believing they were above availing themselves of the appellate process." In response to the police defendants' motion to dismiss, Mr. Starnes concedes that qualified immunity may apply because the court order relating to parole may have been ambiguous to them, just as it was to him.

Only the APA defendants have filed a reply. In this reply, these defendants acknowledge Mr. Starnes' clarification that he is not seeking relief relating to his bank robbery convictions. Further, they note that Mr. Starnes does not address the issue of the seizure of his personal property as alluded to in his complaint. His failure to do so, they contend, constitutes a waiver of any such claim. Finally, they reiterate their statute of limitations argument, noting that Mr. Starnes' own pleadings demonstrate that he knew or should have known in July, 2010 that his search and arrest were "flawed and actionable." They point out that the issue is not whether Mr. Starnes actually knew or had confirmation that his rights were violated, but whether he should have known as of that date.

Because a finding that Mr. Starnes' claims are barred by the statute of limitations would resolve this matter as to all defendants, the Court will turn to that issue first.

### A. Statute of Limitations

State law governs the appropriate statute of limitations for a cause of action arising under §1983. Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005). Under Ohio law, the limitations period is two years. Browning v. Pendleton, 869 F.2d 989, 992 (6th Cir. 1989). However, "federal law governs when the limitations period begins to run." Wallace v. Kato, 549 U.S. 384, 388 (2007). There is no dispute between the parties as to the length of the applicable limitations period. Rather, the issue here is when Mr. Starnes' claims accrued.

In §1983 actions, the statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claims alleged in the complaint. Eidson v. State of Tenn. Dept. Of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007), citing Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 519 (6th Cir. 1997).  Mr. Starnes contends that he did not know of the injury until the Court of Appeals reversed the denial of his motion to suppress, vacated his conviction, and remanded for further proceedings.  Defendants contend that Mr. Starnes had notice of the unlawful search and seizure on July 22, 2010, and, therefore, it is the date of the search that controls for statute of limitations purposes.  For the reasons explained below, defendants are correct.

Prior to the United States Supreme Court's holding in Wallace v. Kato, 549 U.S. 384 (2007), there was some support for Mr. Starnes' position in Sixth Circuit precedent relying on the reasoning set forth in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, "the Supreme Court crafted a deferred accrual rule, that 'a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.'"  Shakleford v. Hensley, Slip Copy, 2013 WL 5371996, *3 (E.D. Ky. Sept. 24, 2013) quoting Heck, 512 U.S. at 489.  In Shamaeizadeh v. Cunigan, 182 F.3d 39 (6th Cir. 1999), the Court of Appeals held "that when a §1983 claim would imply the invalidity of a future conviction, the statute of limitations would not begin to run until the criminal charges have been dismissed."  Fox v. DeSoto, 489 F.3d 227, 234 (6th Cir. 2007).  In Wallace, however, the Supreme Court "specifically held that Heck is not to be extended into the pre-conviction arena."  Eidson, 510 F.3d at 639, citing Wallace, 549 U.S. at 384.  In Fox, the Court of Appeals "explicitly recognized that Wallace 'abrogates the holding in Shamaeizadeh.'"  Eidson,

-8-

510 F.3d at 639, quoting Fox, 489 F.3d at 233.  In Eidson, the Court of Appeals explained the holding of Wallace as follows:

> Moreover, irrespective of the difference between types of §1983 claims asserted, the rule of Heck cannot be divorced from its post-conviction setting.  This is the teaching of Wallace.  Wallace, simply cannot be fairly read to imply that the accrual of a §1983 malicious-prosecution-type claim is necessarily and indefinitely delayed in a pre-conviction setting until there is some accused-favorable resolution of pending or anticipated future prosecution.  The Wallace court event referred to the "Heck-required setting aside of the extant conviction" as it explained the "impracticality" of the urged "bizarre extension" of Heck to the pre-conviction setting. Id. at 1098.  The court went on to observe that "[i]f a plaintiff files a false arrest[-type §1983] claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Id.  Recognizing that a §1983 plaintiff's right to relief could be preserved in this manner, the Wallace court deemed it unnecessary to extend the rule of Heck to the pre-conviction setting.

Id. at 640.

In the years since Wallace, the Court of Appeals and several district courts within this Circuit have held or acknowledged that claims under §1983 for illegal search and seizure - even if the search and seizure leads to a criminal proceeding where the results of the search are used as evidence - accrue at the time of the improper search.  In Harper v. Jackson, 293 Fed.Appx. 389, 391 n.1 (6th Cir. 2008), the Court of Appeals specifically noted that "Wallace also clarified that Heck does not delay the accrual of an otherwise complete and present cause of action when a judgment in the plaintiff's favor 'would impugn an anticipated future conviction.'" Id., quoting Wallace, 549 U.S. at 394.  In Harper, the Court of Appeals stated that Harper's claims accrued on the date of the alleged illegal search and seizure, but that

the [statute of limitations] defense was forfeited by defendants' failure to raise it.  Id.  Harper has been recognized by district courts as establishing that "the general rule of Wallace soundly applies to a search and seizure scenario."  Hornback v. Lexington-Fayette Urban County Government, 905 F.Supp.2d 747, 750 (E.D. Ky. 2012).

Other district courts have relied directly on Wallace's abrogation of Shamaeizadeh to conclude that a search and seizure claim accrues on the date of the unconstitutional conduct.  See, e.g., Ory v. Hamilton County, Tenn., Slip Copy, 2014 WL 1091965, *5 n.2 (E.D. Tenn. March 18, 2014)("... assuming a hypothetical judgment in this litigation that the search and seizure were unconstitutional would not necessarily imply the invalidation of Plaintiff's criminal conviction, the claim would have to be dismissed with prejudice as time-barred.  This is so, because the alleged unconstitutional conduct occurred on December 9, 2009, the cause of action accrued on that date" and the statute of limitations ran before the action was filed).

This Court also has recognized, relying on Wallace, that a Fourth Amendment claim based on a warrantless search accrues on the date of the search.  Pethtel v. Washington Cnty. Sheriff's Office, 2007 WL 2359765, *9 (S.D. Ohio Aug. 16, 2007)(Holschuh, J.) ("Plaintiff's other Fourth Amendment claim, based on the warrantless search of his truck without his consent, is also time-barred.  Plaintiff had a complete and present cause of action on September 8, 2003, the date of the search").

Similarly, relying on Wallace, courts have found that a claim for false arrest in violation of the Fourth Amendment generally accrues when the arrest occurs.  See, e.g., Curran v. City of Dearborn, 957 F.Supp.2d 877, 883 (E.D. Mich. 2013); Taylor v. Terry, 2015 WL 5008782, *3 (M.D. Tenn. Aug. 19, 2015).  The Court of Appeals in Fox, relying on Wallace, stated that "the

statute of limitations for a claim for false arrest, [], 'where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to the legal process.'" Fox, 489 F.3d at 235, quoting Wallace, 549 U.S. at 397.

Under the facts alleged alleged by Mr. Starnes, as described by the Court of Appeals, Mr. Starnes' §1983 claim for a violation of his Fourth Amendment rights is barred by the applicable two-year statute of limitations. As explained above, the date of the Court of Appeals' decision, or as Mr. Starnes' describes it, the day it was made "manifest" to him that a constitutional violation occurred, is not the controlling date for statute of limitations purposes. That is, there is no delayed accrual applicable here as Mr. Starnes suggests. Rather, as the case law dictates, the statute of limitations began to run when Mr. Starnes knew or should have known of the alleged violation of his Fourth Amendment rights. Here, that date was in July, 2010, a date well over two years before the filing date of the complaint. Consequently, the Court will recommend that the motions to dismiss be granted on statute of limitations grounds.

B. Remaining Issues

To the extent that Mr. Starnes states that he "has suffered false imprisonment," the Court does not view that conclusory statement as asserting such a claim. Here, Mr. Starnes makes only a conclusory allegation of false imprisonment and provides no specifics. Moreover, a claim for false imprisonment begins to run when the alleged false imprisonment ends. "Because what makes a false imprisonment 'false' is the detention without due process, 'a false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a magistrate or arraigned on charges.'" Taylor v. Terry, 2015 WL 5008782, *3 (M.D. Tenn. Aug. 19, 2015), quoting Wallace, 549 U.S.

-11-

at 389.  At most, Mr. Starnes indicates in his response to the APA's motion to dismiss that he was "locked [] up for 7 days before any charges other than "parole violator" were lodged against [him]."  The reasonable interpretation of this language is that any alleged false imprisonment claim would have ended in this time frame and would therefore be barred by the statute of limitations.

Similarly, the Court does not construe Mr. Starnes' complaint as raising a Heck v. Humphrey issue.  As defendants recognize, Mr. Starnes clarified in his response that he is not asserting any issues relating to his bank robbery conviction.

Further, to the extent that Mr. Starnes may be attempting to state any type of due process claim for the confiscation of his personal property, he has not alleged that existing state remedies are inadequate.  Consequently, any such claim must fail. See Rothhaupt v. Maiden, 144 Fed.Appx. 465, 472 (6th Cir. 2005); Jefferson v. Jefferson County Public School System, 360 F.3d 583, 588 (6th Cir. 2004).

Additionally, to the extent that Mr. Starnes may be attempting to assert any state law tort claims, it will be recommended that the Court decline to exercise supplemental jurisdiction over any such claims.  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are dismissed before trial, the state claims generally should be dismissed as well").

Finally, the Court notes that Mr. Starnes has not completed service on defendants Sara Andrews and Damian Rodrigruez. See ECF Doc. 7.  Consequently, the Court will recommend that Mr. Starnes' claims against these defendants be dismissed without prejudice under Fed.R.Civ.P. 4(m).  Any claims against them would, of course, also be barred by the statute of limitations.

IV.  Recommendation

For the reasons stated above, the Court recommends that the motions to dismiss (Docs. 12 and 13) be granted. It is further recommended that the claims against Sara Andrews and Damian Rodriguez be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge